If it pleases the court, Brian McComas, on behalf of Bradley Hoover, petitioner and appellant, I'd like to reserve four minutes of time before I start. Mr. Hoover learned of pending potentially capital homicide charges some 16 years after they were filed, and all the while the prosecution alone held advantage over the crucial access to evidence stage. They decided what witnesses would be identified, what evidence preserved, what investigation pursued, and what leads would disappear. You said he learned of them. Didn't he learn of it earlier when he was given a notice? That is one of the factual findings by the Court of Appeal that is not supported by any evidence in the record, Your Honor. And I'll jump to that right away. The Court of Appeal found, and I'll give you the page site so we can follow along. On December 5, 1995, the Sacramento County Sheriff's Department filed a detainer notifying Mr. Hoover of the present case and his right to request a demand for trial. And that's at 467. But I'd ask the Court to go to 276. This is important because in the box that says, Inmate, acknowledge receipt of detainer, that box is not signed or dated. The only other evidence in the record is an interview with Mr. Hoover in January 2011, now 16 years since the crimes, where he expresses complete disbelief to the investigator for the DA's office. And the DA gives him no good reasons for what happened. In fact, the investigator says this. So he had no knowledge of it during that time period. The first he learned of it was when he went to get the job and found out that a hold was going to prevent that. Yes. And actually, he had gone to parole. And as part of that, they said, you know, get a job so you can get out earlier. And then he learned of that in that process. And can you imagine, can you imagine, learning of potentially capital homicide charges pending against you in a parole hearing? That's more than actual prejudice. That's palpable prejudice. Well, why don't you move on to the core issue? I see this as the core issue, Your Honor. Well, what's, you know, what is the, so for due process delay, you know, 16, 17 years, no, I'm not going to argue with you that's not significant delay. But you still have to show actual prejudice. So where's the actual prejudice? Yes, Your Honor. This is not a cold case. And I'm just prefacing this. This is not a case where 17 years later some technology proved Mr. Hoover's guilt. So the jury's told at opening this happened in 1994. And they're given no answer until through trial why we are here in 2011. However, in the middle of trial, they are given the most prejudicial answer possible because Mr. Hoover was in prison for a crime of violence. Not only is that impermissible propensity character evidence, it shifts all the blame for the delay to Mr. Hoover, who didn't even know in time to demand trial, hire an attorney, obtain evidence, do anything for himself. And so that's pure, pure, pure prejudice. Okay, so if he had been on it for whatever reason shortly after the incident, what would he have – what would have been available to him that was not available to him at trial that caused him prejudice, actual prejudice? Yes. I will turn to the transcript from the preliminary hearing of his wife's testimony. And I think this is important because the Court of Appeal, State Court of Appeal, found no evidence that Caravalo, Andrea, his wife, had somehow impeached the version of events told by his accusers at that preliminary hearing. But there's no discussion at all in the Court of Appeal's decision about the only record of the preliminary hearing left. And, again, I would ask the Court, if you can, please turn to page 365 because the visual of this excerpt of record 365, the visual is important. Is that the DA's notes? That's the DA's notes. But that page is important because you'll see at the very bottom left corner preliminary hearing rulings and important findings like does not find Wagner to be credible. And these are the DA's notes. The question of whose gun? Now, establish that the victim was killed in the same field. Then if you move on to page 370, this is notes about the defense, what they presented and did, and this is complete with exclamation marks. Big deal about this. Terry Hussey, the informant, called cops and they wanted to talk with Terry Walling. Hussey and Walling lying at first. Exclamation, exclamation by the prosecutor. That directly undermines the Court of Appeal's finding there was nothing impeaching in that preliminary hearing transcript. And I know Your Honor sat on the Superior Court. It's not very often capital charges are dismissed at the prelim. That is something of value right there. I personally have never seen that. How would he have used this preliminary hearing transcript at trial? Well, let's just ---- Mr. Wagner didn't testify. Mr. Wagner did not testify, but Mr. Wagner very well might be the culprit who did this and same with Mr. Walling. So if we did go back to 1994, we could have subpoenaed Mr. Walling, who was actually in prison, also equally accessible to the prosecution. Mr. Wagner did disappear from the face of the earth apparently in December 1994. Was Wally still around at the time of trial? Walling could not be located at the time of trial in 2011. Nobody knew what happened to him? Nobody knew what happened to him either. One other aspect, Your Honor, that could have been presented in 1994 that I think is actual prejudice is the issue about whether an alibi could have been established. Andrea, confused by 17 years of delay, said, We usually eat at my parents' house, but she confused it for a weekend when this crime occurred on Monday. She had two parents, Brad and Andrea, who were living in their home at the time. And whether or not those two parents would have said, Oh, I know on August 8th they were at my house at dinnertime, they could have established habit evidence. They usually come to my house. And this is important because Mr. Augustin disappeared from the Walling home about 4 p.m., Mr. Hoover's and Andrea's parents usually had dinner about 5 p.m., and the body wasn't called in until about 11 p.m. So there is an issue about the timeline, and again that's where the dispatch logs could have helped too so we could have figured out precisely how far it takes to drive from the Walling home across the Rio Vista Bridge into Sacramento County. But the standard in the Sherlock case is actual non-speculative prejudice, so that's the underlying due process standard, and then we have to review it through the lens of AEDPA and the deference it requires. So with that in mind, how is it not speculative to just say maybe the parents would have testified to this even though she was confused about the day of the week? It seems speculative. It seems like maybe there might have been something there, but it might have, and so it's speculative, isn't it? I think that's a hard standard to deal with after 17 years after the fact, and this isn't preserved. I mean, this is a capital case. We're expecting heightened standards of reliability on behalf of the prosecution. They don't preserve a preliminary hearing transcript within They still have 10 years to preserve that thing until 2004, and they don't do that. And so to go back and try and reconstruct what would have happened in 1994, it's a speculative standard by even asking us to do that. But you can look at the trial, and you can see that the jury struggled in this case, 10 hours, 3 days deliberating, and you can see why they convicted Mr. Hoover, which was they learned of a crime of violence supposedly explaining the delay as his fault. So that is actual prejudice. That's 100 percent actual. And I think that's exactly how they reached this verdict. And I'd just kind of also like to look at just the basics of the fundamental rights we're talking about here because due process is a lot of them. Notice, Mr. Hoover did not receive notice in time. Access to evidence. Mr. Hoover could not access evidence for 16 years. Preservation of evidence. Prosecution didn't preserve evidence. Presumption of innocence. Impugned with character evidence. Proof beyond a reasonable doubt lowered in that manner. And that is not a combination leading to a fair trial. And there isn't a reason to wait. The prosecution admitted at trial the only thing they were waiting for was John Wagner's return. But the magistrate judge of the preliminary hearing found his statements to be incredible. He lied to the police. He made a false police report about stealing the car that was used for the kidnapping. He was described as a lop, L-O-P, lowest of all people. Why would the prosecution want to present that? Why aren't they charging Mr. Wagner? And in the end, you know for sure that there is no reason for the delay due to Mr. Wagner because the prosecution filed a notice saying, hey, we can just introduce his hearsay statements anyhow, though they didn't do that. So this delay is just not consistent with the concept of ordered liberty. And that's a fundamental thing to our American scheme. The ultimate decency of a civilized society decides the way we treat our prisoners. And that reflects a fairness determination. That's far worse for an innocent man to be convicted than a guilty man to go free. Okay. You want to save your time for rebuttal? I do, but I want to say one thing. That fairness determination is not the perspective of the prosecution. They could wait like this in every capital homicide case. It's the perspective of everybody else. It's the perspective from the Augustine family, who shouldn't have had to wait 17 years. It's the perspective from the judge in the court, who shouldn't have had this on his docket for 17 years. It's the perspective of Mr. Hoover, who's now waiting 25 years for relief in all. Thank you. Thank you. Good morning, Your Honors, and may it please the Court, Kevin Quaid for the respondent. Your Honors, before I dive into the reasonableness of the State Court of Appeals' prejudice adjudication in this case, I do want to touch on a point brought up by Judge Collins, which is the standard of review in this case. This Court can only grant relief if it finds that no fair-minded jurist could agree, could concur with every aspect of the Court of Appeals' denial on prejudice grounds. And that's the central facet, that's the central tenet of this case. But I want to dive specifically into some of the points brought up by my colleague on the other side about specific allegations of prejudice. And I'll first talk about ---- What evidence do you have that he learned of the charges more contemporaneously? Because you don't have a signed form. Is there anything else? I don't. The record is unclear on that. I think it's reasonable. The State Court's factual finding in that respect was reasonable because we know that this detainer was filed with the prison system. I think it was a reasonable inference that Mr. Hoover would have known. I think the more important point is, though, that the ---- Was it filed at the time it was filed as a detainer as a capital charge? It was. I don't have a clear answer. There was ---- It was filed that a complaint charging murder had been filed against Mr. Hoover, and that was filed with the prison system in 1995, I believe. Is it customary that people just kind of blow off a murder charge pending against them and they just think nothing of that if they're aware of that? No. I mean, I don't think that's customary. He was in on a ---- He had a fairly substantial sentence. He did, Your Honor. He was in on a life with parole, I believe, on attempted murder. But I think just to get back, the State is not, for lack of a better term, holding it against Mr. Hoover that he didn't file sooner. The central analysis that this Court has to grapple with in this case is was he prejudiced? Was his trial in 2011 rendered fundamentally unfair by the period of pre-indictment delay in this case? So making that argument, you're not relying on him being at fault or, you know, because in the normal sort of speedy trial of federal conduct, the assertion of the right is one of the barker factors. Exactly. So you're not taking that position with respect to this delay issue here. Exactly. This isn't a dogged case. This is a pure and simple due process, a Lavosko pre-indictment delay analysis. And so what the case turns on, what Lavosko said was that prejudice is a necessary required component, non-speculative, concrete prejudice. And in this case, the Court of Appeal went through each allegation of prejudice and made a reasonable determination that there was no prejudice, a determination that fair-minded jurists could easily concur with. And so I want to turn specifically to a couple of those aspects of the claim. And specifically, I'll talk about the missing alibi testimony that my colleague brought up. So Ms. Carvalho's parents, of course, were deceased by the time of trial. But the Court of Appeal reasonably found that there was reason to believe that they would not have provided an actual alibi and that even if they could have provided some generally helpful evidence, testimony, that that testimony would not have been deemed credible. And this was a reasonable finding by the State Court of Appeal. If you look, and it was touched on during my colleague's time, Andrea Carvalho's actual testimony from the trial, she was unsure about certain things. But what she was not unsure about was that the purported alibi dinner occurred on a Saturday or Sunday. She made clear for the jury that the reason after 17 years she remembered that dinner so specifically was because she had a tradition of going over on the weekends and looking after her parents. And, of course, the crime in this case occurred on a Monday night. So there was not, as a matter of fact, an actual alibi that could have been corroborated. And to the extent this Court can presume and I think speculate is the right term to think about it, but to the extent this Court can presume anything about what Ms. Carvalho's parents would have testified to, it must at least presume they would have corroborated her asserted clear memory of the dinner at issue. And so, in fact, an alibi would not have been established. And the Court of Appeal also recently found that, given their family connection, even if they testified generally favorably, it would not have been the type of testimony that that would have been deemed credible. So fair-minded jurors could agree with the Court of Appeal's adjudication as to the alibi testimony. So that will take me to the disappearance of purported important witnesses, particularly John Wagner and Terry Walling, who were not available by the time of trial. And the Court of Appeal looked at these witnesses and reasonably found that their disappearance at trial actually benefited Mr. Hoover. And if one even looks for a moment at the transcript, the summaries of their statements to police in 1994, it becomes clear that had these witnesses testified, it would have been devastating, corroborating evidence for the primary witness at trial. They would have corroborated Terry Hussey's testimony about what occurred leading up to the kidnapping. Mr. Wagner would have largely corroborated Ms. Hussey's testimony about a confession heard from Andrea Carvalho about what happened in the cornfield. So fair-minded jurors could easily concur with the State Court of Appeal's no prejudice finding in that aspect. So is it really the case that the reason why the State did nothing with this was that they were hoping Wagner would show up again? Or is it just that he was in for a long time and they just kind of put this on the back burner? Yeah, so the record is scant about the motivations. There was some evidence in the record that at least the delay was triggered, at least at the start, by missing this really critical witness, this one of the few all there is in the record. But again, I think the important part here is, under Lovasco, unless a concrete showing of actual prejudice is made, this Court doesn't reach the second step of the analysis, where you balance the prejudice against the justification evidence. And with that, I'd like to briefly touch on the absence of the preliminary hearing transcript. Now, the State Court of Appeal reasonably found that this transcript, to the extent it existed, had no tendency to be exculpatory of Mr. Hoover. And this was a reasonable finding. But before we even get there, I think the record here easily supports a finding that there was never a transcript generated in this case. The prosecutor stated in pretrial hearings that Sacramento County's practice was to not generate a preliminary hearing transcript when a defendant was not held to answer. But the court reporter's notes would have been retained and the transcript could have been generated from the notes. Isn't that really the issue, that the notes were destroyed in 2004? Certainly. Certainly. I mean, I think that is something that's possible. There's nothing specific in the record about that, but I suppose that's a reasonable inference. That's probably what happened. I was just going to say, as I recall, that the State, under the State law, the court reporters only need to keep their notes. I think it's for 10 years. That's correct. That sounds correct to me, Your Honor. But I think, okay, so even apart from the fact that there may not have been a destruction of something that could have led to a transcript, the State court of appeal here made an adjudication that was reasonable, that those notes, that transcript, whatever it may be, would not have been exculpatory of Hoover. And on the record before it, that was a reasonable determination. Did Wagner testify at that preliminary hearing? I'm sorry? Did Wagner testify at that preliminary hearing? He did not. It was in California. It was Prop 115 evidence. So an officer came on and basically gave hearsay testimony at the prelim about the police statement that had been given. Okay. So when we read in the handwritten notes that Wagner not credible, that's really just based on reviewing what the officer is saying about what Wagner said. Exactly. And I think there are some important points about that. If you review the summary of what Wagner testified to, it's clear that at the time he gave the testimony. Wagner didn't testify. Excuse me. Told police, yes. It's clear that at the time he spoke to police, he was still a potential suspect in the police's eyes. He was Mirandized at the outset of that police statement. And so there's reason to believe that he might not have been as forthcoming. But he's viewed as a potential suspect. And when even the officer secondhand recounts the story, the judge, you know, doesn't believe it, and then you, you know, they represent to the court that they were holding this because they wanted to get him. Why isn't his loss significant? You said he was a critical and the only percipient witness. And so being able to put him up the stand even as a hostile witness and, you know, attack him, why isn't that prejudice? Well, because I think, Judge Collins, first of all, the fact that he did not give testimony at the actual trial means there was nothing to rebut, no reason to cross-examine him. But again, even if you – No, but if this had been done back in, you know, 17 years earlier, we have to look at what's the effect of the delay. If this had been moved in a timely manner, Wagner would have been there and they could have put him up on the stand and they could have tried at least. Yeah. And I think given the record available, the State's Court of Appeals belief that Wagner testifying would have been far more harmful and would not have – would have tremendously harmed the defendant's case as opposed to benefited it was reasonable. If you look, he corroborates everything about the people who went out to the cornfield. Now, if I can say, I – it's hard to know from the prosecutor's notes what exactly the magistrate judge found not credible about Wagner's police statement. But I think an obvious candidate is the idea that he told police that after being conscripted into this group that kidnapped the victim and drove all the way out to Sacramento County, he told police that Hoover tossed him the keys to one of the cars and said, take off. I think, especially given the fact that he was giving this statement as a suspect, that's something that jumped out to me as potentially an aspect of his statement that is not credible. I think if you look at the other aspects of his statement, they're absolutely corroborated by what Ms. Husey testified to, she heard about Ms. Carvalho's confession. The facts of those two statements jive really well and lend credibility to each other. And that's – I guess I'll leave the Court with this. It is true that much of the incriminating evidence came from one witness, from Terry Husey, but there's plenty of reason in this record to believe that her testimony was credible, was accurate. Did you have anything other than her testimony? Yeah. I mean, as I said, the bulk of the incriminating evidence in terms of incriminating Mr. Hoover came from her, but there is plenty of evidence in the record that connects in with what her testimony was that lends it credibility. So, for instance, the fact that the police held out the information about two crime scenes, only a person with precipient knowledge of how the crime went down could have known that the victim was shot 400 yards in on a dirt road, crawled back up to the highway, and was shot again. That lends credibility to Ms. Husey's testimony about the confession. By Carvalho. By Carvalho. And another point, her initial statement to police, which was admitted for the jury, talked about how Ms. Carvalho had admitted that when they came back to the scene, they found the victim sitting at the edge of the highway on his knees when they shot him a second time. Well, that testimony is corroborated by the physical evidence in the medical examiner's testimony about the bullet path going through the victim's head. And in fact, the medical examiner opined that a theory of that bullet wound was consistent with the victim having been on his knees. It's a little fact, but it lends credibility to Husey's testimony about what Carvalho confessed to. So just looking at it, this was largely a one-witness case, but it was an incredibly credible one-witness case whose testimony was backed by independent places in the record that generally lends credibility to what she testified to. Okay. Thank you so much. Thank you. I'm just going to start with some of these credibility things that we brought up there. Another reason to disbelieve John Wagner is he said the victim was killed with a .45-caliber weapon. We know that's not true. Did he have his own gun that he was trying to hide for? Unclear. Husey, in terms of being credible, also has her problems. Her initial interview, she said this occurred in Yolo County. Now, the Delta is a confusing place to drive around, but Yolo is 50 miles or so from that leads me to believe that the magistrate at that prelim rejected this confusing statement for lots of reasons going to reliability, but also facts that don't match up in the record. Husey was at the Walling Home when Michael disappeared. There the next day when they lied to Michael's brother about what happened to him. She was there when they lied again to the police about what happened to Michael. She was still there a couple weeks later when she talked to the police about her husband, another Terrence Husey, and she was there even further later when Walling was arrested for probation violation. He was taken to county jail, and about a week later she calls and says, I want to speak with you, but only in the jail cell with Mr. Walling. And they were given time to discuss before this started, and then they had a dual interview. This was presented at that preliminary hearing in 1994, and that judge found that's not sufficient to hold Andrea, who's supposedly driving the car during a kidnapping murder, to capital homicide charges, the most serious. And so there is an incredibility question with these two witnesses. They're both incredible. That's why this evidence is so pale. That's why the jury took so long to make a determination. And I just want to point out, like it did in its answering brief, the government has not addressed the inadmissible propensity evidence that was introduced to explain the delay is somehow Mr. Hoover's fault. The court of appeal didn't address it. It's not in the answering brief, and you didn't hear about it today in an oral argument from anywhere but me. That is in itself the type of evidence that violates due process, and it doubly does so here, where it's trying to explain the delay is somehow Mr. Hoover's fault. I want to just touch on the right to counsel because I think it's okay for the court to consider these rights in tandem. And, you know, Justice Rehnquist recognized there is a loosely called area of constitutionally guaranteed access to evidence. And Mr. Hoover was denied that when he wasn't given counsel, even though adversarial proceedings had been initiated through a complaint and up to a preliminary hearing. And if they got a holding order at that prelim, you would have expected the prosecution to use that transcript against my client. There's nothing an effective attorney could have done in this situation. And I'll just close by noting that if you grant us the relief we're requesting, Mr. Hoover is not walking out of prison. He still has to earn parole, but he'll get a fair chance. And that's not what he got at trial. Thank you. Okay. Thank you very much, counsel, for your arguments. We appreciate your arguments, and the matter is submitted at this time. That ends our session for today and for the week. Thank you all very much. Thank you.
judges: Paez, Collins, Choe-Groves